IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SUZETTE WHITMAN : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO. 08-2667 |
| PROCONEX, INC. : | |

**SURRICK, J.**                                                                                          **JANUARY  14, 2009**

**MEMORANDUM & ORDER**

Presently before the Court are Plaintiff's Motion for Leave to File Amended Complaint (Doc. No. 12) and Defendant's informal motion to compel.  For the following reasons, both motions will be denied.

**I.     BACKGROUND**

Suzette Whitman ("Plaintiff") filed this employment discrimination action claiming that her employer Proconex, Inc., ("Defendant") violated her rights under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq*.  Plaintiff's initial Complaint was filed on June 6, 2008.  (*See* Doc. No. 1.)  The Complaint alleged that Plaintiff took FMLA-qualified leave from Tuesday, November 27, 2007, to Friday, November 30, 2007, in order to care for her daughter, who has Down Syndrome and who had been admitted to the hospital with bacterial pneumonia.  (*Id*. ¶¶ 15-22.)  Plaintiff alleged that she notified Defendant of these circumstances. (*Id*. ¶¶ 16-23.)  Plaintiff claimed that "Defendant terminated [Plaintiff] because she took an FMLA-covered leave to care for the serious medical condition of her daughter" (*id*. ¶ 40), that "Defendant violated FMLA by failing to put [Plaintiff] on notice of her FMLA rights despite [D]efendant's awareness that she was entitled to same" (*id*. ¶ 41), and that "[a]lternatively and/or

additionally, [D]efendant's termination of [Plaintiff] in December 2007 was made in retaliation for taking the aforementioned leave from work, in violation of FMLA" (*id*. ¶ 42). Defendant filed its Answer on July 2, 2008. (*See* Doc. No. 3.) On August 1, 2008, a Scheduling Order was entered after conference with Counsel. The Order directed that all discovery be completed no later than October 10, 2008. (*See* Doc. No. 8.) Dispositive motions were to be filed no later than November 21, 2008, and trial was scheduled for January 26, 2008. (*Id*.)

Defendant filed a Motion for Summary Judgment on November 21, 2008. (*See* Doc. No. 9.) Plaintiff filed her response on December 5, 2008. (*See* Doc. No. 11.) On December 10, 2008, Plaintiff filed the instant Motion for Leave to File Amended Complaint. (*See* Doc. No. 12.) Defendant responded on December 22, 2008, objecting to Plaintiff's request as untimely (Doc. No. 13), and Plaintiff filed a reply on December 26, 2008 (Doc. No. 16).

In her Motion, Plaintiff argues that while her initial Complaint focused upon the circumstances surrounding her FMLA-qualified leave beginning on November 27, 2008, "[P]laintiff learned during discovery that, beginning in or around April 2007, [D]efendant's HR Manager (Lynnda Petrucelli) and Vice President of Sales (John Otte), began to closely monitor [P]laintiff's performance." (Doc. No. 12 at 2.) Plaintiff alleges that she only learned of this monitoring during the depositions of Petrucelli and Otte, which took place on October 8, 2008, two days before the close of discovery, and that the information was not contained in Defendant's Answers to Interrogatories, or in the documents produced by Defendant. (*Id*. at 2-3.) Plaintiff asserts that she "simply could not have known the whole truth until she took these depositions." (*Id*. at 4.) Plaintiff's proposed Amended Complaint adds allegations that Defendant began monitoring Plaintiff, with the goal of terminating her employment, in

2

retaliation for FMLA-protected leave taken in April 2007. (Doc. No. 12, Ex. (Proposed Am. Compl. at ¶¶ 45-46).)

Defendant responds that "[t]o the extent that Plaintiff claims these allegations somehow became apparent during the depositions of Defendant's witnesses on October 8th, this still does not explain the two (2) month delay in seeking leave to file an Amended Complaint." (Doc. No. 13 at 2.) Defendant argues that it would be prejudiced by the inclusion of the new allegations because it would "be forced to engage in additional discovery, including medical discovery related to early April 2007 absences to determine whether such absences were covered by the FMLA." (*Id*. at 2.)

In her reply, Plaintiff insists that she "did not learn until October 8, 2008 that [D]efendant is asserting that [D]efendant's Vice President of Sales, John Otte, was the sole decision maker who terminated [P]laintiff" and that Defendant "intentionally misled [P]laintiff earlier in the case as to the full and complete basis for [the] decision to terminate [Plaintiff] . . . ." (Doc. No. 16 at 1.) Plaintiff argues that until the October 8 disclosure that Petrucelli and Otte had begun to monitor Plaintiff following "performance issues" in April 2007, she could not have known that the April 2007 absences were considered in the decision to terminate her employment. (*Id*. at 2-3 & n.1.) Plaintiff explains the delay between the October 8 deposition testimony and the December 10 Motion by conceding that "she was a little slow[] in realizing the significance of this testimony . . . ." (*Id*. at 6.) Plaintiff also argues that "there has been no prejudice to [D]efendant because . . . [D]efendant could not have engaged in the discovery it now claims to need even had [P]laintiff [taken] steps immediately after the October 8 depositions to seek leave to amend." (*Id*.)

On December 16, 2008, Defendant informally brought a discovery dispute to the Court's attention by means of a letter. (*See* Letter from Larry J. Rappoport, Esq., Defense Counsel, to the Court (Dec. 16, 2008).) In the letter, Defendant alleges that "although Whitman's allegations and claims under the FMLA place her daughter's alleged medical condition squarely at issue, she has nonetheless rebuffed Proconex's repeated efforts to obtain his [sic] relevant medical information, and has denied Proconex the opportunity to discover the nature of her daughter's alleged condition during the relevant time period." (*Id*.) Defendant asserts that "on October 10, 2008, Proconex provided Whitman with four (4) authorizations for the release of medical records related to the care and treatment of Whitman's daughter . . . ." (*Id*.) Plaintiff has refused to sign these authorizations. Plaintiff objects to this discovery as untimely. (Letter of John A. Gallagher, Esq., Plaintiff's Counsel, to the Court (Dec. 17, 2008).) Plaintiff states that "at no time prior to the close of discovery did [D]efendant issue any subpoenas to any medical provider of Ms. Whitman or her family. Indeed, it was not until the last day for discovery, October 10, that [D]efendant for the first time submitted medical authorizations for Ms. Whitman's execution." (*Id*.)

**II.   DISCUSSION**

    **A.   Motion for Leave to File Amended Complaint**

Federal Rule of Civil Procedure 15 provides that, after responsive pleadings have been served, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility." *In re Burlington Coat Factory Sec. Litig.*, 114

4

F.3d 1410, 1434 (3d Cir. 1997). "The passage of time, without more, does not require that a motion to amend a complaint be denied; however, at some point, the delay will become 'undue,' placing an unwarranted burden on the court, or will become 'prejudicial,' placing an unfair burden on the opposing party." *Adams v. Gould*, 739 F.2d 858, 868 (3d Cir. 1984). "Delay may become undue when a movant has had previous opportunities to amend a complaint." *Cureton v. NCAA*, 252 F.3d 267, 273 (3d Cir. 2001); *see also Odyssey Waste Servs. v. BFI Waste Sys.*, No. 05-1929, 2006 U.S. Dist. LEXIS 63861, at *10-11 (E.D. Pa. Sep. 6, 2006) (denying leave to amend complaint that was filed 20 days after the close of discovery where movant had been in possession of the information necessary to file a motion to amend for one month prior to filing, and finding that movant's excuse that it failed to review carefully the available discovery did not serve as an adequate justification for delay); *Fatir v. Dowdy*, No. 95-677, 2002 U.S. Dist. LEXIS 16480, at *20 (D. Del. Sep. 4, 2002) ("The plaintiff's delay may become undue after a motion for summary judgment is filed where the movant has had previous opportunities to amend a complaint, but chose not to do so."). "When a party fails to take advantage of previous opportunities to amend, without adequate explanation, leave to amend is properly denied." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006). In addition, "substantial or undue prejudice to the non-moving party is a sufficient ground for denial of leave to amend." *Cureton*, 252 F.3d at 273. In weighing the effect of prejudice, courts should consider "whether allowing an amendment would result in additional discovery, cost, and preparation to defendant against new facts or new theories." *Id*.

> Courts have found undue prejudice to the non-moving party and denied leave to amend where the amendment would have asserted new claims, where new discovery would have been necessary, where the motion for leave was filed months after the factual basis of the amendment was discovered by the moving party, and where the

motion for leave was brought after summary judgment motions were filed. *Cummings v. City of Philadelphia*, No. 03-0034, 2004 U.S. Dist. LEXIS 9030, at *11 (E.D. Pa. Apr. 26, 2004).

In the instant case, a review of the record reveals that Plaintiff had sufficient information well before October 8, 2008, to put her on notice that an amendment to her Complaint might be appropriate.[1] Nevertheless, she waited until mid-December, well after the October depositions and well after the discovery deadline, to file her Motion for Leave to File Amended Complaint.

---

[1] In its Answer to Plaintiff's Interrogatories, Defendant explained that a contributing reason for terminating Plaintiff's employment was that "Plaintiff failed to follow through with corrective action plans to make up time lost to excessive absences . . . ." (Doc. No. 12, Ex. B, No. 18.) Plaintiff was also provided with several emails that indicated that Defendant was troubled by Plaintiff's April 2007 absences. (*See* Doc. No. 9, Ex. W-7 ("You've been missing quite a few days lately. Is everything alright? I realize that some of the absences are a bit out of your control, but the strain it is placing on the GTT is causing stress for all involved."); *id.*, Ex. W-8 ("[The meeting] was called because Suzette has missed a high percentage of days over the last two weeks (approximately 5.5 days out of the last 10 working days) because of various family or personal illnesses. This missed time is causing much strain on the work flow of the GTT, and customers are being affected in a negative way."). Moreover, Defendant provided discovery demonstrating that Defendant was distressed by Plaintiff's attendance problems before the late November 2007 leave. (*See id.*, Ex. W-26 ("[T]he biggest problem is the fact that Suzette is only working about 30 hours a week (if that) for a job that requires 40."). During Plaintiff's deposition on September 19, 2008, Defense Counsel questioned Plaintiff about her April 2007 absences and subsequent emails and meeting with supervisors. (*See* Doc. No. 9, Ex. (Whitman Dep. at 57-66, 71-74).) It is also worth noting that Plaintiff should not have been unduly surprised to learn that Defendant was trying to build a case to terminate employment considering the following exchange at Plaintiff's deposition:

> Q. Do you have an explanation as to why Alan Erhlich would be sending this [email] to Lynnda Petrucelli and Lynnda Petrucelli sending it to Bob Batten and Phil Russo?
> A. I can't say.
> Q. Did you have any reason to believe in July or August of 2007 that they were looking for a reason to get rid of you?
> A. No.

(*Id.* at 106.)

By mid-December, discovery had been closed for two months, summary judgment motions had been fully briefed, and trial was scheduled to begin in a matter of weeks. Plaintiff's explanation for the delay – that she was slow in recognizing the significance of the deposition testimony – does not justify the prejudice that would result to Defendant or the added burden on the Court that would occur if Plaintiff were permitted to amend at this late date.[2] Accordingly, Plaintiff will not be permitted to amend her Complaint to add this new claim.

### B.  Informal Discovery Motion

In Defendant's informal discovery motion, Defendant complains that Plaintiff has refused to sign the authorizations for Plaintiff's daughter's medical records. Plaintiff admits that she will not sign the authorizations, and points out that Defendant sent the authorizations on the last day of discovery. (*See* Doc. No. 8 ("All discovery, expert and otherwise, shall be completed no later than October 10, 2008.").)

Regarding requests to produce documents, Federal Rule of Civil Procedure 34(b) provides that "[t]he party to whom the request is directed must respond in writing within 30 days after being served. A shorter or longer time may be stipulated to under Rule 29 or be ordered by the court." Fed. R. Civ. P. 34(b)(2)(A). In the absence of a stipulation between the parties that a shorter response time be permitted, "requests must be served at least thirty days prior to completion of discovery deadline." *Thomas v. Pacificorp*, 324 F.3d 1176, 1179 (10th Cir. 2003). If the parties cannot agree regarding discovery responses, then they must approach the Court to extend the time periods specified in the Scheduling Order. Where a party propounds untimely

---

[2] The filing of an amended complaint at this juncture would necessitate a new scheduling order, additional discovery, the filing of supplemental dispositive motions, and the rescheduling of trial.

discovery requests, the other party will not be compelled to respond, except in the Court's discretion. *See, e.g.*, *Thomas*, 324 F.3d at 1179 (finding, where plaintiff served untimely discovery requests to which defendant did not respond, that "the district court did not abuse its discretion in determining that discovery was completed before granting summary judgment" because "requests must be served at least thirty days prior to a completion of discovery deadline"); *Tota v. Bentley*, No. 06-514, 2008 U.S. Dist. LEXIS 61885, at *9 (W.D.N.Y. Aug. 12, 2008) ("A party may not be compelled to respond to discovery requests after the discovery cut off . . . ."); *Williams v. Little Rock Mun. Water Works*, No. 92-3, 155 F.R.D. 188, 189 (E.D. Ark. Apr. 8, 1993) (holding that defendant need not respond to discovery requests that "were not propounded in time for the responses to be due before the discovery cutoff").

      Defendant has been aware from the very beginning of this case that Plaintiff's daughter's medical condition is an issue.  Defendant does not explain why it waited until the last day of discovery to seek this information, nor does it explain why it waited until two months after the close of discovery to informally approach the Court.  Defendant is not entitled to information that is the subject of an untimely discovery request and that Defendant could have sought easily earlier in the discovery period.  Accordingly, we will not compel Plaintiff to sign the medical record authorizations.

      An appropriate Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SUZETTE WHITMAN | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 08-2667 |
| PROCONEX, INC. | : | |

**ORDER**

AND NOW, this __14th__ day of January, 2009, it is ORDERED as follows:

1. Plaintiff's Motion for Leave to File Amended Complaint (Doc. No. 12) is DENIED; and

2. Defendant's informal motion to compel is DENIED.

IT IS SO ORDERED.

BY THE COURT:

_____
R. Barclay Surrick, Judge